**UNITED STATES COURT OF APPEALS**

**July 11, 2011**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CRESENCIO OCHOA-TOVALI,

    Defendant - Appellant.

No. 11-2018
(D.C. No. 2:10-CR-02502-BB-1)
(D. N. Mex.)

## ORDER AND JUDGMENT[*]

Before **BRISCOE**, Chief Judge, **MURPHY** and **MATHESON**, Circuit Judges.

Cresencio Ochoa-Tovali pleaded guilty to reentry of a removed alien in violation

of 8 U.S.C. § 1326(a) and (b). He was sentenced to 57 months' imprisonment, the low

end of the applicable Sentencing Guidelines range. This range reflected a criminal

history category of IV because Mr. Ochoa-Tovali committed a robbery in 1995 and

---

[*]After examining appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

because his probation for a 1993 misdemeanor was revoked when he pleaded guilty to the robbery. Under the Guidelines for illegal reentry, the range also reflected a 16 offense-level enhancement for the robbery.

On appeal, Mr. Ochoa-Tovali argues that the district court weighed too heavily his 1993 and 1995 offenses and weighed too lightly his reason for reentering, which was flight from drug cartel violence in northern Mexico. He challenges his sentence as substantively unreasonable. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2), we AFFIRM his sentence.

## I. BACKGROUND

**A.** *Facts*

Mr. Ochoa-Tovali was born in Cuauhtemoc, a city in northern Mexico, and entered the United States at age 13 in 1980. He committed a series of misdemeanors in Colorado in the 1990's. He was charged with misdemeanor assault in 1991 but failed to appear in court. He was charged with a new domestic violence misdemeanor assault in 1993, pleaded guilty to that assault and the 1991 assault, and was sentenced to probation. Later in 1993 he was again charged with domestic violence. He pleaded guilty to that charge and received probation. In 1995 he pleaded guilty to DUI and was ordered to complete community service before sentencing, but he failed to appear at sentencing. In 2004, the warrant for his failure to appear expired.

Mr. Ochoa-Tovali committed two felonies before the illegal reentry here—robbery and a previous illegal reentry. He pleaded guilty to a 1995 robbery in Colorado state

court and was sentenced to eight years' imprisonment. His robbery conviction caused the probation on his most recent domestic violence conviction to be revoked, and he was sentenced to two years' imprisonment for that charge. In 2002, he was paroled to Immigration and Customs Enforcement custody and deported to Mexico. Three days after he was deported, he illegally reentered the country. He pleaded guilty to illegal reentry in federal court in Arizona and was sentenced to 63 months' imprisonment. In 2007 he was released from custody and deported again to Mexico.

This appeal stems from Mr. Ochoa-Tovali's second illegal reentry into the United States. On August 31, 2010, he pleaded guilty without a plea agreement to reentry of a removed alien under 8 U.S.C. § 1326(a) and (b) in federal district court in New Mexico.

**B.** *Sentencing*

The presentence report (PSR) gave Mr. Ochoa-Tovali three criminal history points for the two years he served after his probation was revoked on the 1994 domestic violence charge, three points for the robbery, and three points for his earlier illegal reentry. He received zero points for his two earlier assaults and his DUI because each of those charges did not result in imprisonment and occurred over ten years before this offense. *See* U.S.S.G. § 4A1.2(e)(2). Mr. Ochoa-Tovali's nine criminal history points put him in criminal history category IV. *See* U.S.S.G. § 5A.

The base offense level for illegal reentry is eight. U.S.S.G. § 2L1.2(a). Mr. Ochoa-Tovali received a 16-level increase because his robbery was a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A). For pleading guilty, he received a three-level

-3-

downward adjustment for acceptance of responsibility. See U.S.S.G. § 3E1.1. His total offense level of 21 and his category IV criminal history yielded a Guidelines range of 57 to 71 months.

Mr. Ochoa-Tovali submitted to the court a sentencing memorandum requesting a downward variance and a sentence of 30 months' imprisonment. He included the two arguments he raises on appeal.

First, he argued that his criminal history was over-represented in both his criminal history category and his total offense level. The former included points for two stale convictions—three points for his 1995 robbery and, because that robbery caused his probation to be revoked, three points for his 1993 misdemeanor conviction. The latter included a 16-level increase for the 1995 robbery.

Second, he argued that his sentence should reflect that his reason for reentering was to avoid drug cartel violence in northern Mexico.

The government asked for 63 months' imprisonment. The district court imposed 57 months, the low end of the Guidelines range. Mr. Ochoa-Tovali appeals that sentence, arguing that the district court's denial of his request for a downward variance was an abuse of discretion.

## II. DISCUSSION

### A. *Issue and Standard of Review*

The issue is whether Mr. Ochoa-Tovali's sentence was substantively reasonable. "[T]he familiar abuse-of-discretion standard of review . . . applies to appellate review of

sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007); *see also United States v. Rausch*, 638 F.3d 1296, 1302 (10th Cir. 2011) ("Substantive reasonableness . . . is reviewed under an abuse-of-discretion standard."). The Supreme Court has emphasized that "[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall,* 552 U.S. at 51.

**B. *Substantive Reasonableness***

Mr. Ochoa-Tovali advances two arguments. First, he argues that the district court imposed a harsher sentence than necessary to satisfy the sentencing goals of 18 U.S.C. § 3553(a) by weighing too heavily his criminal history, in particular his 1993 misdemeanor conviction and his 1995 robbery conviction. Second, he argues that his sentence failed to recognize that his reentry was in part a flight from the drug violence in northern Mexico.

Because the district court sentenced Mr. Ochoa-Tovali within the applicable Guidelines range, we start with a presumption that the sentence was reasonable. The Supreme Court "permit[s] courts of appeals to adopt a presumption of reasonableness" when the district court sentenced a defendant within the Guidelines range. *Rita v. United States*, 551 U.S. 338, 354 (2007). This court has "applied a presumption of reasonableness in reviewing within-guidelines sentences imposed upon conviction." *United States v. McBride*, 633 F.3d 1229, 1232 (10th Cir. 2011).

**1.** *Criminal History*

Mr. Ochoa-Tovali argued in his sentencing memorandum and now argues on appeal that his sentence weighs too heavily his 1993 misdemeanor conviction and his 1995 robbery conviction. These convictions affected his sentence in two ways: his criminal history calculation and the 16 offense-level increase under the illegal reentry Guideline.

He received criminal history points for his 15-year-old robbery conviction because it had been less than 15 years since he was released. *See* U.S.S.G. § 4A1.2(e)(1). He also received criminal history points for his 17-year-old misdemeanor conviction because he was sentenced to two years' imprisonment following his probation revocation in 1996 and was released from that imprisonment less than 15 years ago. *See id.*

Mr. Ochoa-Tovali received a 16 offense-level increase because his robbery was a "crime of violence." *See* U.S.S.G. § 2L1.2(b)(1)(A)(ii). He does not claim his criminal history category or the offense-level increase was calculated incorrectly, just that the stale convictions are weighed too heavily in the sentencing court's consideration of the § 3553(a) factors.

Mr. Ochoa-Tovali draws our attention to *United States v. Amezcua-Vasquez*, 567 F.3d 1050 (9th Cir. 2009). In *Amezcua-Vasquez*, the defendant was convicted of illegal reentry and sentenced to 52 months, which was within a Guidelines range reflecting a 16-level enhancement for two 25-year-old felonies. *See id.* at 1052-53. The Ninth Circuit said that "[t]he staleness of the conviction does not affect the Guidelines calculation, but

it does affect the § 3553(a) analysis." *Id.* at 1056.

In *United States v. Chavez-Suarez*, 597 F.3d 1137 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 286 (2010), we discussed *Amezcua-Vasquez* and "agree[d] with the Ninth Circuit that the staleness of an underlying conviction may, in certain instances, warrant a below-Guidelines sentence." 597 F.3d at 1138. In *Chavez-Suarez* we affirmed a within-Guidelines range sentence of 41 months. The range reflected a 16-level enhancement because the defendant had been sentenced to 18 months' imprisonment on a marijuana conviction 11 years before his illegal reentry conviction. *Id.* at 1137-39.

Mr. Ochoa-Tovali's staleness argument for a downward variance is even weaker than Mr. Chavez-Suarez's. Comparing the stale convictions in each case, Mr. Ochoa-Tovali was sentenced to more than five times as much incarceration (eight years compared to eighteen months) as Mr. Chavez-Suarez. Although Mr. Ochoa-Tovali's prior conviction was four years older than Mr. Chavez-Suarez's, Mr. Ochoa-Tovali's release from prison was more proximate to his illegal reentry because he served such a long sentence. Mr. Ochoa-Tovali committed a violent robbery after having committed three prior assault offenses. The district court in this case decided that Mr. Ochoa-Tovali's extensive and violent criminal record precluded a downward variance.

Our role is not to second-guess the district court's treatment of the § 3553(a) factors. "The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not

conveyed by the record." *Gall*, 552 U.S. at 51 (quotation omitted).

In this case, the district court explicitly considered the staleness of the offenses. At the sentencing hearing, the government argued: "Although some of [Mr. Ochoa-Tovali's] convictions are for misdemeanors, as fully outlined in the presentence report and in the response, these incidents are extremely violent, and he has a third degree [misdemeanor] assault conviction." ROA, Vol. 3 at 12. The court responded: "They are not recent, however." *Id.* The court ultimately concluded that Mr. Ochoa-Tovali had "a substantial criminal record" that did not warrant a sentence "outside the range of the guidelines." *Id.* at 13.

The court's statement indicates that it sought to balance the staleness and the seriousness of Mr. Ochoa-Tovali's criminal history. Under our deferential standard of review, "we are not persuaded that the district court's judgment fell outside the range of rationally permissible choices before it." *Chavez-Suarez*, 597 F.3d at 1139 (quotation omitted). The court did not abuse its discretion by denying a downward variance based on the staleness of the prior convictions.

### 2. *Drug Cartel Violence in Northern Mexico*

Mr. Ochoa-Tovali states that his primary reason for reentering the United States was flight from drug cartel violence in northern Mexico. He contends the district court abused its discretion by denying a downward variance on this ground.

The district court considered this argument. Mr. Ochoa-Tovali raised it in his sentencing memorandum and again at his sentencing hearing. Counsel for Mr. Ochoa-

-8-

Tovali stated that her client "had lifesaving reasons for wanting to return here." ROA, Vol. 3 at 10. The court asked, "How are those [reasons] going to be any different when he's sent back?" *Id.* The court appeared open to the argument, stating that "this is a case where [the court would] be inclined to depart or rely on [§] 3553" were it not for Mr. Ochoa-Tovali's criminal history. *Id.* at 13.

Mr. Ochoa-Tovali cites no authority for the proposition that sentencing courts must reduce sentences for illegal reentry defendants fleeing violence in their home countries. His proposed solution—a shorter sentence and thus a quicker deportation to Mexico—would not make it less likely that he will reenter the United States again. The district court considered Mr. Ochoa-Tovali's argument and decided it could not overcome his criminal history. We find no abuse of discretion.

We hold that Mr. Ochoa-Tovali's reason for illegally reentering the United States did not render his sentence substantively unreasonable.

### III. CONCLUSION

The district court did not abuse its discretion by sentencing Mr. Ochoa-Tovali to 57 months' imprisonment. Mr. Ochoa-Tovali's sentence is AFFIRMED.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge