FILED
United States Court of Appeals
Tenth Circuit

December 15, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENETH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSE ANGEL CARRILLO-
RODRIGUEZ, a/k/a Angel
Garcia-Perea, a/k/a Angel Garcia
Pereira,

Defendant-Appellant.

No. 11-1067

(D. of Colo.)

(D.C. No. 10-CR-00218-REB)

ORDER AND JUDGMENT[*]

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.[**]

Mr. Carrillo-Rodriguez pleaded guilty to the offense of illegal reentry after

deportation subsequent to an aggravated felony conviction. At sentencing, he

moved for a downward variance from the applicable United States Sentencing

Guidelines (USSG) range based on the staleness of his prior felony. The district

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

court declined to grant it, instead sentencing Carillo-Rodriguez at the bottom of the applicable guidelines range. He appeals his sentence, arguing that it is substantively unreasonable.

Exercising our jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we AFFIRM the decision of the district court.

## I. BACKGROUND

The record shows Carrillo-Rodriguez is approximately 40 years old and was born in Mexico. He first entered the United States when he was 14 years old. In 1995, he was convicted in Colorado on state charges of possession of heroin with intent to distribute, and sentenced to 4 years imprisonment. In 1996, he was deported to Mexico. At some point after removal, he reentered the United States. He committed several more crimes, including reckless driving in 2002, shoplifting in 2009, driving while impaired in 2009, and theft in 2010. In March 2010, Colorado authorities released him to the custody of U.S. Immigrations and Customs Enforcement (ICE). He was charged with the present offense in April 2010, and pleaded guilty in September 2010 pursuant to a plea agreement.

Carrillo-Rodriguez's offense carried a base offense level of 8 under the Guidelines. But his offense level was increased to 24 pursuant to USSG § 2L1.2(b)(1)(A)(I), due to his 1995 drug conviction, which qualified as a drug trafficking offense. After making the appropriate adjustments for Carrillo-Rodriguez's criminal history and acceptance of responsibility, the district court

arrived at a guidelines range of 57 to 71 months imprisonment. Carrillo-Rodriguez moved for a downward departure and variance, based on the staleness of his 1995 conviction, which he characterized as his only "serious" prior conviction. R., Vol. 2 at 42.

The district court denied Carillo-Rodriguez's motion. It acknowledged that it had discretion to depart downward, but found that "the defendant's criminal record does not substantially overrepresent his criminal history category or the likelihood of recidivism." *Id.* at 49. In considering "the nature and circumstances of the offense as committed by Mr. Carrillo," *id.* at 50, the court reasoned:

> I distinguish between two groups of defendants; those whose discovery in this country is fortuitous, bordering on the accidental, and those whose illegal immigration status come to the attention of ICE because while they are in the custody of state or local authorities while detained or incarcerated on non-immigration related criminal charges, they come to the attention of the authorities.
> Mr. Carrillo falls squarely into the disfavored second group. . . .
> . . .
> He certainly has reaped the benefits, privileges and advantages afforded by this country. But to his detriment he has failed to reciprocate.
> While in this country, even illegally, Mr. Carrillo had the simple duty and responsibility to live a law-abiding life. For reasons best known to himself he has chosen to do otherwise.
> He has been convicted of an aggravated felony which resulted in his first removal. He reentered this country illegally, again with the opportunity to lead a law-abiding life, and again for reasons best known to himself, did not do so.
> . . .

He stands before the court frankly with a philosophy that evinces to a disturbing extent a disrespect and disregard for state and federal authority . . . and federal immigration authority.

*Id.* at 50–51. Based on this reasoning, the court sentenced Carrillo-Rodriguez to 57 months, the bottom of the guidelines range.

## II. DISCUSSION

We review a claim of substantive unreasonableness for abuse of discretion. *United States v. Lewis*, 594 F.3d 1270, 1277 (10th Cir. 2010). "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (internal quotation marks omitted). A sentence "within the properly calculated guidelines range . . . is presumed reasonable." *Id.* "The defendant may rebut the presumption, however, by demonstrating that the sentence is unreasonable when viewed against the other factors delineated in [28 U.S.C.] § 3553(a)." *Id.* (internal quotation marks omitted).

Section 3553(a) lists the factors a sentencing court must consider when imposing a sentence. Carrillo-Rodriguez's argument focuses on two of these factors: "the nature and circumstances of the offense," § 3553(a)(1), and "the history and characteristics of the defendant," § 3553(a)(2).

Carillo-Rodriguez argues that his sentence is unreasonable under § 3553 because of the staleness of his prior felony convictions. He urges that because his prior felony was committed in 1995, and he has not had another felony conviction

since then, the district court should have given less weight to the history of the defendant, and more weight to the nature of the offense.

In support of his argument, Carillo-Rodriguez relies heavily on *United States v. Amezcua-Vasquez*, 567 F.3d 1050 (9th Cir. 2009). In that case, the defendant, Amezcua-Vasquez, was convicted of attempted illegal reentry after deportation for an aggravated felony. *Id.* at 1052. Amezcua-Vasquez had originally moved to the United States in 1957, when he was two years old, and became a permanent resident. *Id.* His aggravated felony was a 1981 conviction for assault with great bodily injury related to a bar fight. *Id.* After his release in 1984, he was convicted of four other offenses: battery in 1987, violation of a court order in 1993, driving under the influence in 1993, and "us[ing], or be[ing] under the influence of any controlled substance" in 1999. *Id.* at 1052 & n.1. In 2006, he was deported based on his 1981 conviction, pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which expanded the class of deportable felonies and applied retroactively. *See id.* at 1056 n.4. Two weeks after being deported, he was apprehended entering the United States. *Id.* at 1052.

Amezcua-Vasquez pleaded guilty to attempted illegal reentry after deportation for an aggravated felony. At sentencing, he was sentenced to 52 months imprisonment, in the middle of the applicable guidelines range of 46 to 57

months.  *Id.* at 1053.  He objected to the substantive reasonableness of his sentence.  *Id.*

On appeal, the Ninth Circuit Court of Appeals found that his sentence was substantively unreasonable, because the guidelines range gave too much weight to his 1981 felony conviction.  The court explained,

> [a]lthough it may be reasonable to take *some* account of an aggravated felony, no matter how stale, in assessing the seriousness of an unlawful reentry into the country, it does not follow that it is inevitably reasonable to assume that a decades-old prior conviction is deserving of the same severe additional punishment as a recent one.

*Id.* at 1055.  The court found that the aggravated felony was "unrepresentative of [Defendant's] characteristics," because "there is no indication that he has committed another offense listed in [USSG] Section 2L1.2 or has harmed another person or the property of another for the past twenty years."  *Id.* at 1056.  The court also found it significant that Amezcua-Vasquez's crime did not become a deportable offense until 1996, 15 years after he committed it.  *Id.*  The court noted that a below-guidelines sentence would not create "unwarranted sentencing disparities" under § 3553(a)(6) due to the defendant's "record of relative harmlessness to others for the past twenty years."  *Id.* at 1058.  Thus, it vacated the defendant's sentence and remanded for resentencing.  *Id.*

Carrillo-Rodriguez argues he is in a position similar to Amezcua-Vasquez, and should be sentenced accordingly.  Of course, we are not bound by Ninth Circuit sentencing jurisprudence, and our own approach to substantive

reasonableness in sentencing differs in significant ways. For example, we apply a presumption of reasonableness to a within-guidelines sentence, while the Ninth Circuit does not. *Compare Lewis*, 594 F.3d at 1277, *with Amezcua-Vasquez*, 567 F.3d at 1055.

We recently considered, and rejected, a similar substantive reasonableness claim based on *Amezcua-Vasquez*. In *United States v. Vasquez-Alcarez*, 647 F.3d 973, 975 (10th Cir. 2011), another illegal reentry case, the defendant's sentencing enhancement was based on an 11-year-old conviction for cocaine trafficking, and the district court refused to grant a downward variance. We acknowledged "that the staleness of an underlying conviction may, in certain instances, warrant a below-Guidelines sentence." *Id.* at 978 (quoting *United States v. Chavez-Suarez*, 597 F.3d 1137, 1138 (10th Cir. 2010)). But we found no unreasonableness because the defendant trafficked a "serious drug," and because the district court fully considered the defendant's "criminal history, his pattern of reentry, his family situation, and his acceptance of responsibility." *Id.* Here, the district court did exactly the same, and Carrillo-Rodriguez's prior felony was likewise for a "serious drug" offense—possession of heroin with intent to distribute.

Even assuming for the sake of argument that *Amezcua-Vasquez* is persuasive, many relevant differences exist between Carillo-Rodriguez and Amezcua-Vasquez that illustrate why Carillo-Rodriguez's sentence was substantively reasonable. Furthermore, these differences are grounded in facts

that the district court specifically relied upon in rejecting Carillo-Rodriguez's request for a downward variance.

First, Amezcua-Vasquez's last conviction for *any* crime was seven years prior to his arrest for illegal reentry. Here, in contrast, Carillo-Rodriguez was convicted of theft and drunk driving immediately prior to his conviction for illegal reentry. In fact, it was his arrest on larceny charges that led directly to the instant case. As the district court noted, Carrillo-Rodriguez's discovery by immigration authorities was not "fortuitous, bordering on the accidental," but was a direct result of his arrest. R., Vol. 2, Doc. 36, at 50.

Second, the *Amezcua-Vasquez* court focused on what it considered to be the less-serious nature of the defendant's most recent prior conviction, which was for "us[ing], or be[ing] under the influence of any controlled substance." *Amezcua-Vasquez*, 567 F.3d at 1052. The court explained that "although [Amezcua-Vasquez] has evidently struggled with a substance addiction, there is no indication that he . . . has harmed or attempted to harm another person or the property of another for the past twenty years." *Id.* at 1056. Here, in contrast, Carillo-Rodriguez was convicted for theft, an intentional property crime. While we do not here endorse the view that crimes related to substance abuse are unserious, even if we were to adopt that view, it would not excuse Carillo-Rodriguez's choice to steal from others on at least two recent occasions.

Third, Amezcua-Vasquez was arrested during his attempted reentry. In contrast, Carillo-Rodriguez was arrested many years after he reentered the United States. Thus, Carillo-Rodriguez, unlike Amezcua-Vasquez, had an opportunity to demonstrate his "relative harmlessness to others" after reentering. *Amezcua-Vasquez*, 567 F.3d at 1058. But, as the district court emphasized, after reentering Carillo-Rodriguez had "the opportunity to lead a law-abiding life, and again for reasons best known to himself, did not do so." R., Vol. 2, Doc. 36 at 50. His continued engagement in criminal activity heightens the contrast between him and Amezcua-Vasquez and further illustrates the appropriateness of a within-guidelines sentence.

Fourth, at the time of Amezcua-Vasquez's aggravated assault conviction in 1981 (which formed the basis for his deportation in 2006), aggravated assault was not considered an "aggravated felony" for purposes of deportation. *See Amezcua-Vasquez*, 567 F.3d at 1056. In addition, Amezcua-Vasquez was a legal permanent resident prior to his deportation. Thus, Amezcua-Vasquez was not 'on notice' in 1981 that his conviction for aggravated assault would result in deportation. In contrast, Carillo-Rodriguez was not a legal resident, and even if he had been, heroin possession with intent to distribute was a deportable offense at the time he committed it. *See* 8 U.S.C. § 1251(a)(2)(B) (1994). Thus, Carillo-Rodriguez was not taken unawares by a subsequent legislative change that made him eligible for deportation.

The district court considered the § 3553(a) factors, including Carillo-Rodriguez's specific characteristics.  Based on Carillo-Rodriguez's persistent involvement in crime, the court declined to grant a downward variance, and instead imposed a sentence at the bottom of the guidelines range.  The district court clearly acted within "'the range of rationally permissible choices' before it." *Chavez-Suarez*, 597 F.3d at 1139 (quoting *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007)).

## III.  CONCLUSION

Because the district court did not abuse its discretion in declining to grant Carillo-Rodriguez's request for a downward variance, we AFFIRM the judgment of the district court.

ENTERED FOR THE COURT,

Timothy M. Tymkovich
Circuit Judge